IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

v.

WB-DIVERSIFIED AUTO SERVICES, INC. d/b/a/ WB EVENT CENTER,

        Defendant.

1:15-cv-2171-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s ("Plaintiff") Application for Default Judgment Against WB-Diversified Auto Services, Inc. d/b/a WB Event Center [6] ("Motion for Default Judgment").

**I.    BACKGROUND**

Plaintiff claims that Defendant WB-Diversified Auto Services, Inc., doing business as WB Event Center ("Defendant"), violated certain provisions of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605, by unlawfully intercepting, receiving, and exhibiting "Floyd Mayweather, Jr. v. Robert Guerrero –WBC Welterweight Championship Fight Program" (the "Program"), a telecast of a fight broadcast on May 4, 2013.  (See Compl. [1] ¶ 7).

Plaintiff owned the exclusive television distribution rights to the Program. (Id.). Commercial establishments could show the Program to their patrons if they were contractually authorized by Plaintiff to do so. (See id. ¶¶ 8, 10).

On May 4, 2013,[1] Aaron Ware, an investigator hired by Plaintiff, visited Defendant's establishment, "WB Event Center," located at 2800 Campbellton Road SW, Atlanta, Georgia. (Ware Aff. [6.2 at 17-18] at 1). Ware paid a cover charge of $25 to enter the establishment. (Id.). Once inside, Ware observed that the Program was being exhibited and that, over the course of fifteen (15) minutes, approximately 40 to 49 people were inside Defendant's establishment. (Id.). Defendant had not contracted with Plaintiff to show the Program. (Gagliardi Aff. [6.2 at 19-25] at ¶ 7).

On June 17, 2015, Plaintiff filed its Complaint asserting claims for (1) unauthorized reception and publication of radio or satellite transmissions, in violation of 47 U.S.C. § 605, and (2) unauthorized reception and publication of cable service, in violation of 47 U.S.C. § 553. On July 9, 2015, Plaintiff served Defendant with process in this matter [4]. As of the date of this Order, Defendant has not answered or otherwise responded to Plaintiff's Complaint.

---

[1] The reference to "May 4th, 2012," in the first sentence of Ware's Affidavit appears to be a typographical error. The last sentence contain the correct year.

2

On August 3, 2015, Plaintiff filed its Application for Clerk's Entry of Default [5] against Defendant, and, on August 4, 2015, the Clerk issued an entry of default.  On August 12, 2015, Plaintiff filed its Motion for Default Judgment [6].

## II.   DISCUSSION

### A.   Legal Standard

Rule 55(b) of the Federal Rules of Civil Procedure governs entry of a default judgment:

> (1) *By the Clerk.*  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) *By the Court.*  In all other cases, the party must apply to the court for a default judgment. . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
>    (A) conduct an accounting;
>    (B) determine the amount of damages;
>    (C) establish the truth of any allegation by evidence; or
>    (D) investigate any other matter.

Fed. R. Civ. P. 55(b).  "The entry of a default judgment is committed to the discretion of the district court . . . ."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985) (citing 10A Charles Alan Wright et al., Federal Practice and

Procedure § 2685 (1983)). "In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint." Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).

    B.    Analysis

        1.    *Liability*

In its Complaint, Plaintiff seeks relief under two different statutory provisions—47 U.S.C. § 605, or, alternatively, 47 U.S.C. § 553.[2] Section 605 provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).[3] Section 553 provides that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless

---

[2]     Plaintiff can recover under only one statute. See, e.g., J & J Sports Prods., Inc. v. Blackwell, No. 2:07-cv-1058, 2009 WL 2171897, at *2 (M.D. Ala. July 21, 2009); J & J Sports Prods., Inc. v. Guzman, No. C 08-05469, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16, 2009).

4

specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Id. § 553(a)(1).

There is a split among the circuits as to what activity each section covers and how to reconcile potential overlap in the provisions.[4] Some circuits have held that Section 605 applies to satellite transmissions *and* cable programming transmitted over a cable network. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir. 1996) (holding that both Section 605 and Section 553 cover interception of cable programming transmitted over a cable network). Other circuits have held that only Section 553 covers cable programming transmitted over a cable network. See TRK Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001) ("§ 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."); United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996) (affirming district court's finding that "where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable

---

[3]   Satellite signals are considered "radio communication." Scientific-Atlanta, Inc. v. Fenley, No. 1:95-cv-1584, 1997 WL 33543688, at *12 (N.D. Ga. Jan. 14, 2007) (citing United States v. Howard, 13 F.3d 1500, 1501 (11th Cir. 1994)).
[4]   The Eleventh Circuit has not addressed this issue.

5

network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network"). The Court is persuaded by the Third and Seventh Circuits' interpretation of Section 605's plain language, and finds that Section 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while Section 553 addresses interceptions that occur through a cable network. See Scientific-Atlanta, 1997 WL 33543688, at *14; CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1364 (S.D. Fla. 1999).[5]

Plaintiff does not allege in its Complaint or Motion for Default Judgment whether the Program was illegally obtained and broadcast through the interception of satellite or cable transmissions. Plaintiff instead states that Defendant "could only lawfully obtain the Program if Plaintiff had contracted with the Defendant for the rights to show the Program," and that "[t]herefore, Defendant must have undertaken specific wrongful actions to intercept and/or receive and broadcast the encrypted telecast." (Pl.'s Mem. Supp. Mot. Default J. [6.2] at 5).

The Court elects to "giv[e] Plaintiff the benefit of the doubt" and "not fault[] Plaintiff for failing to plead the particular manner of interception since this may be

---

[5] Plaintiff appears to accept this interpretation. (See Pl.'s Mem. Supp. Mot. Default J. [6.2] at 4) ("The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.").

exclusively in Defendant['s] knowledge." See J & J Sports Prods., Inc. v. Gallegos, No. 08-201, 2008 WL 3193157, at *3 (D.N.J. Aug. 5, 2008).  Plaintiff alleges, and the evidence supports, that Defendant intercepted the Program, Defendant did not pay for the right to receive the transmission, and Defendant displayed the broadcast to patrons of its establishment.  These facts are sufficient to support that Defendant violated the common elements of Sections 605 and 553.

### 2. *Damages*

The Court may award damages for default judgment without a hearing only if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985).  Under such circumstances, the record must "adequately reflect[] the basis for award via . . . demonstration by detailed affidavits establishing the necessary facts." Id. at 1544.  "[A] plaintiff must also establish that the amount is reasonable under the circumstances." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

Under Section 605, a court may award statutory damages between $1,000 and $10,000 for each violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award up to an additional $100,000, id.

§ 605(e)(3)(C)(ii).  Under Section 553, a court may grant statutory damages between $250 and $10,000 per violation, id. § 553(c)(3)(A)(ii), and up to $50,000 may be awarded if the court finds that the Act was violated "willfully and for purposes of commercial advantage or private financial gain," id. § 553(c)(3)(B).  In addition to damages, Section 605 provides that a court shall, and Section 553 provides that a court may, award the plaintiff full costs of bringing an action, including reasonable attorneys' fees.  Id. § 605(e)(3)(B)(iii), § 553(c)(2)(C).

Plaintiff seeks $10,000 for the violation of § 605(e)(3)(C)(i)(II) and $10,000 for the violation of Section 553(c)(3)(A)(ii).  Plaintiff also seeks enhanced damages of up to $100,000 for Defendant's willfulness, pursuant to Section 605(e)(3)(C)(ii).  Plaintiff requests its costs and reasonable attorneys' fees for prosecuting this action.

The difference in the authorized range of statutory damages permitted by Section 605 and Section 553 is not material here, because the Court declines to award the minimum or maximum amount of statutory damages under either section.  The starting point for Plaintiff's statutory damages is $2,200, because that is what Defendant would have had to pay, at a minimum, to legitimately purchase the right to broadcast the Program.  (See Gagliardi Aff. ¶ 8 & Ex. 1).  The Court also concludes that statutory damages will deter others from unlawful broadcasts.

The Court determines that statutory damages of $4,400 is an appropriate award in this case because Defendant had to undertake affirmative and willful steps to intercept and illegally broadcast the Program.  See Blackwell, 2009 WL 2171897, at *3 (awarding $2,500 in statutory damages as deterrence where base price would have been $1,200); J & J Sports Prods., Inc. v. Guzman, No. C 08-05469, 2009 WL 1034218, at *3 (N.D. Cal. Apr. 16, 2009) (setting statutory damages award at twice the base level price of the program to deter future violations).

The Court finds further that Plaintiff is entitled to be reimbursed its attorneys' fees and costs.  Plaintiff shall submit an application for attorneys' fees and costs on or before February 5, 2016.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Application for Default Judgment Against WB-Diversified Auto Services, Inc. d/b/a WB Event Center [6] is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff against Defendant for $4,400 in statutory damages.

**IT IS FURTHER ORDERED** that, on or before February 5, 2016, Plaintiff shall submit an application for attorneys' fees and costs.

**SO ORDERED** this 21st day of January, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE